## Case No. 4,056.

### The D. P.

### KELLEY v. THOMPSON.

[1 Lowell, 124.][1]

District Court, D. Massachusetts. Feb., 1867.

#### COLLISION—LIGHTS—EXPERT EVIDENCE.

1. The omission of the libellants to carry upon their vessel the side-lights required by statute, will not necessarily prevent a recovery of damages for collision. It is a fault which, if it caused or contributed to the collision, will bar the damages, or cause them to be divided, as the case may require.

2. It is not safe to rely upon the opinion of experts as to the course which a vessel took, when the opinion is founded on a very nice calculation of time and of angles, and is opposed to the clear testimony of eye-witnesses.

3. Upon the facts, held, that the libellants' vessel, which was without lights, was solely in fault, unless the accident was inevitable, and in neither case could the libellants prevail.

The schooner Romp, loaded with iron, and bound on a voyage from Boston to Jonesport in Maine, was run into and sunk a few miles outside of Thacher's Island, Cape Ann, on the evening of March 16, 1866, by the schooner D. P.; and this libel was promoted by her owners for the damage. The night was very foggy, the wind about S. S. W.; the Romp was sailing on the starboard tack, with the wind free, heading about N. E. by E., and had no lights set. The D. P. was closehauled, on the port tack, heading about W. by S., with the red and green lights properly placed and burning brightly. The Romp had two men on the lookout, one of whom reported a light, and the master immediately came on deck and ordered his helm to be put hard down, at the same time hailing the D. P. to put her helm hard up. The only fact seriously disputed was, whether the respondents' vessel obeyed the order given from the Romp, or took the opposite course and luffed.

John Lathrop, for libellants.

1. The fact that the Romp did not have the lights required by the act of congress, does not prevent the libellants from recovering, as the absence of the lights did not cause the collision. The Panther, 24 Eng. Law & Eq. 585; Morrison v. General Steam Nav. Co., 8 Exch. 733.

2. If the absence of lights did contribute to the collision, the libellants are entitled to recover half damages, the D. P. being also in fault. Chamberlain v. Ward, 21 How. [62 U. S.] 548.

3. The vessels were meeting end on, or nearly end on, within the 11th article of the United States statute of 1864, c. 69 (13 Stat. 60), and it was the duty of both vessels to port their helms. The evidence shows that the Romp ported her helm, and that the D. P. luffed instead of porting.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

J. C. Dodge, for respondents.

We admit that the vessels were meeting nearly end on, but not that we omitted to port as soon as we heard the hail. If the Romp had carried lights, she would have been seen sooner. Having broken the law in this respect she cannot recover whether the D. P. was in fault or not.

LOWELL, District Judge. Reasonable care and skill are expected of persons in charge of ships. The statute specifies some of the precautions proper to be taken by navigators, and leaves others, equally obligatory, to the common law of the sea. It is no bar to a recovery of damages in a case of this kind, that one of these precautions, whether imposed by the statute, or having a different foundation, has been neglected, unless the neglect caused or contributed to the collision. Chamberlain v. Ward. 21 How. [62 U. S.] 548.

The evidence in this case, on both sides, shows that the lights of the D. P. were seen before the hull or the sails of either vessel were visible from the other; and it is probable that if the Romp had had her lights, time enough might have been saved to have enabled the vessels to clear each other. If not, the disaster was inevitable, and in either case the libellants cannot recover, unless it be true, as they allege, that the D. P. luffed. All the witnesses on board that vessel deny it, and no one on the libellants' schooner, excepting the mate, is willing to say that he saw any change of that sort, though they argue that one must have been made. It is not probable that men who could see nothing, but only hear a hail to put their helm up, should at once proceed to put it down. The mate, who was examined several months later than the others, says he saw first the red and then the green light, but I find him not only unconfirmed in this, but contradicted by his own crew in one most material matter, and in several of less importance, so that I cannot rely on his evidence.

Some gentlemen of nautical experience have given it as their opinion, that if the vessels were meeting in the direction and at the distance supposed, and the libellants changed their course as they say they did, the vessels could not have come together if the D. P. had ported her helm. But the value of such an opinion depends on so nice a calculation of times, courses, and distances, that I should not feel safe in adopting it against the clear weight of the direct testimony of eye-witnesses. One of the experts said that a variation of half a point in the course of either schooner would make the difference between clearing and not clearing. I find that the respondents ported as soon as they had warning, and are not in fault. It is admitted on both sides that the vessels were meeting nearly end on; but if they were not, the libellants would be no better off, because they had the wind free and must assume the burden of giving way. The libel must be dismissed; and

the allegation that the respondents' men wantonly or carelessly abandoned the boat of the lost schooner not being proved, costs will follow the decree. Libel dismissed.

NOTE. Affirmed by the circuit court, May term, 1867 [unreported].